IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

DEVIL'S ADVOCATE, LLC, *et al.*,  )
    Plaintiffs,  )
                    )
       v.                 )      Case No. 1:13-cv-1246
                    )
ZURICH AMERICAN INSURANCE  )
COMPANY,  )
    Defendant.  )
                    )

## **MEMORANDUM OPINION**

By Order dated October 10, 2014,[1] defendant's motion for summary judgment in this matter was granted in part and deferred in part. Defendant's motion was granted with respect to plaintiffs' breach of contract and conversion claims, but the ruling on plaintiffs' copyright infringement claim was deferred pending further briefing. Specifically, because the record was unclear as to whether plaintiffs' copyright in a document titled "Devil's Advocate Confidential Proposal" also covered plaintiff John Toothman's resumé, the October 10 Order directed the parties to submit evidence on this issue. Both parties complied with the October 10 Order and filed timely submissions on whether plaintiffs' copyright Certificate listing the Confidential Proposal also extended to Toothman's resumé. Accordingly, the previously-deferred portion of defendant's summary judgment motion is now ripe for disposition.

I.

The parties' dispute arises from their unsuccessful negotiations concerning whether defendant would retain plaintiff John Toothman as an expert witness on legal fees in a civil case

---

[1] *Devil's Advocate, LLC, et al. v. Zurich American Ins. Co.*, No. 1:13cv1246 (E.D. Va. Oct. 10, 2014) (Doc. 75) (hereinafter "October 10 Order").

1

filed in Texas.[2] The facts pertinent to plaintiffs' copyright infringement claim may be succinctly stated.[3] As reflected in the summary judgment record and the Court's October 10 Opinion,[4] the parties engaged in a series of email and telephone communications in which defendant considered whether to retain plaintiffs in evaluating disputed legal fees in the Texas litigation. In the end, as the October 10 Opinion reflects, the parties did not reach an agreement, as there was never any meeting of the minds as to plaintiffs' fee. *See* October 10 Opinion at *5-*7.

In the course of their negotiations, Toothman, on October 12, 2010, sent Blair Dancy, an attorney representing defendant, an email outlining Toothman's potential availability to testify in the Texas litigation, as well as plaintiffs' normal rates for reviewing and analyzing legal bills. In this email, Toothman advised Dancy he was attaching his resumé, which he did. Also, it is undisputed that plaintiffs' website states that Toothman's resumé is available to prospective clients upon request.

On November 19, Dancy served opposing counsel in the Texas litigation with an Amended Designation of Expert Witness which listed Toothman as one of defendant's experts and included Toothman's resumé. This Amended Designation of Expert Witness was also included in an Amended Motion for a Rule 166 Pretrial Conference filed in the Texas court on December 3.[5] As the summary judgment record indicates, Toothman was aware of, and

---

[2] The plaintiffs in this action are John Toothman, a licensed attorney, and Devil's Advocate, LLC, a legal fee management and consulting company wholly owned by Toothman (hereinafter collectively referred to as "plaintiffs").

[3] For a more complete recitation of facts, *see Devil's Advocate, LLC et al. v. Zurich American Ins. Co.*, No. 1:13-cv-1246, ___ F. Supp. 2d ___, 2014 WL 5161197 at *1-*4 (E.D. Va. Oct. 10, 2014) (hereinafter "October 10 Opinion").

[4] *Id.*

acquiesced in, defendant's designation of Toothman as an expert in the Texas litigation even though the parties had not reached agreement on retention.

Thereafter, Toothman emailed Dancy on multiple occasions, asking when plaintiffs could expect to begin work, noting in one email that "naming me [Toothman] as a witness before we [are] retained is likely to cause us some issues."[6] Also, although plaintiffs were aware that Toothman had been designated as an expert witness in the Texas litigation, the record makes clear that the parties never reached an agreement for defendant to retain plaintiffs. Notably, with the exception of the October 12 email, it does not appear from the summary judgment record that the parties explicitly discussed Toothman's resumé during negotiations.

In January of 2011, Toothman emailed defendant an invoice for services rendered in the Texas litigation, contending that defendant had effectively retained him when it designated him as an expert upon filing its Amended Designation of Expert Witness in the Texas litigation. Defendant disagreed, and attempted to resolve this issue with Toothman over the telephone. After Toothman declined to discuss this issue further, defendant removed Toothman's name from defendant's expert witness designation in the Texas litigation. Thereafter, the Texas litigation was resolved. Plaintiffs then filed this action, alleging breach of contract, conversion, and copyright infringement. Summary judgment was granted in favor of defendant on plaintiffs' breach of contract and conversion claims. *See* October 10 Order at 1. With respect to plaintiffs' copyright infringement claim, plaintiffs allege that defendant's use and submission of Toothman's resumé infringed the copyright plaintiffs hold in Toothman's resumé. Plaintiffs

---

[5] *See* Tex. R. Civ. P. 166(i) ("In an appropriate action . . . the court may in its discretion direct the attorneys for the parties . . . to consider . . . [t]he exchange of a list of expert witnesses who will be called to testify at trial . . . .").

[6] Memorandum in Support of Defendant's Motion for Summary Judgment, Ex. 13.

3

further contend that Toothman never consented to the use and submission of his resumé in the Texas litigation in any of the parties' communications.

## II.

### A.

It is well-settled that a plaintiff seeking to prove copyright infringement must show ownership of a valid copyright. *Feist Publ's, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). A certificate of copyright registration is credible evidence of copyright validity, as "[t]he submission of a valid certificate of copyright registration creates a presumption of originality for five years from the date of recognition." *Universal Furniture Int'l Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 430 (4th Cir. 2010).

At the time of oral argument on defendant's motion for summary judgment, the copyright Certificate in the record listed only plaintiffs' Confidential Proposal, and Toothman's resumé was neither listed nor referred to in the Certificate.[7] Accordingly, the October 10 Order directed the parties to submit further briefing on the specific question of whether the Certificate extended to Toothman's resumé. The parties complied with this direction, and a review of their submissions confirms that plaintiffs have carried their burden on this point by submitting a Certificate of Registration retrieved from the Copyright Office which shows that Toothman's resumé was part of the Confidential Proposal when that document was submitted to the Copyright Office. Moreover, the Confidential Proposal, at the bottom of page 2, states that Toothman's resumé is attached to the Confidential Proposal. It appears therefore, on this record, that the Certificate covers Toothman's resumé as well as the Confidential Proposal.

---

[7] The title of the work in the Certificate is "Devil's Advocate Confidential Proposal."

4

Defendant does not point to any contrary evidence beyond the fact that plaintiffs did not explicitly designate Toothman's resumé as protected by the Certificate either in an exhibit to the complaint or in the supplemental Toothman declaration, respectively. These facts do not contradict that the resumé was submitted to the Copyright Office as part of the Confidential Proposal and hence they fall far short of rebutting the presumption of validity stemming from plaintiffs' Certificate which extends to Toothman's resumé. Therefore, the summary judgment analysis proceeds on the basis that plaintiffs' copyright Certificate extends to Toothman's resumé due to the presumption of validity associated with the Certificate. *See Universal Furniture*, 618 F.3d at 430 ("The submission of a valid certificate of copyright registration creates a presumption of validity for five years from the date of registration.").

## B.

Defendant argues that Toothman consented to defendant's use of his resumé and that this consent bars plaintiffs' copyright infringement claim. *See* 1 Nimmer on Copyright § 3.01 ("[An infringing work] is saved from being an infringing work . . . because the borrowed or copied material was taken with the consent of the copyright owner of the prior work . . . ."). Unlike plaintiffs' conversion claim—which defendant convincingly rebutted by pointing to clear and undisputed record evidence demonstrating Toothman's awareness of, and acquiescence in, the disclosure of his name—defendant has produced no evidence that Toothman was aware that his *resumé* was submitted to opposing counsel and the court in the Texas litigation. In the numerous email exchanges between Dancy and Toothman after October 12, Toothman's resumé is never discussed.

To overcome the absence of any evidence that Toothman consented to the use and submission of his resumé, defendant relies on a Texas Rule of Civil Procedure governing

requests for discovery disclosure. This reliance is misplaced. The provision in question simply states: "A party *may* request disclosure of any or all of the following . . . the expert's resumé and bibliography." *See* Tex. R. Civ. P. 194.2(f)(4)(B) (emphasis added). The record does not disclose whether the adverse party in the Texas litigation made such a request, nor whether the Texas rules require submission of resumés for expert witnesses. In any event, the requirements of the Texas Rules of Civil Procedure have no bearing on whether plaintiffs consented to the submission of Toothman's resumé; plaintiffs were not parties to that litigation. Because defendant lacks any record evidence that Toothman consented to the submission of his resumé in the Texas litigation, summary judgment on this ground must be denied.

### III.

The parties' principal dispute regarding plaintiffs' copyright infringement claim focuses sharply on defendant's asserted fair use defense. For purposes of summary judgment, defendant concedes that it submitted Toothman's resumé in its entirety to the Texas court. But defendant contends that no copyright infringement occurred because defendant's submission of Toothman's resumé was a fair use.

The bundle of exclusive rights associated with a valid copyright is subject to a list of important statutory exceptions. One such exception is the fair use defense found at 17 U.S.C. § 107, which states that "the fair use of a copyrighted work . . . is not an infringement of copyright." Although now codified, the fair use doctrine is a longstanding common-law principle that predates codification. In essence, the fair use defense allows individuals other than the copyright owner to use the copyrighted material in a reasonable manner without the owner's consent. *See Harper & Row Publishers, Inc. v. Nation Enter's*, 471 U.S. 539, 549 (1985). It is an equitable rule of reason that resists precise definition or simplification with bright-line rules.

*See Bouchat v. Baltimore Ravens Ltd. P'ship*, 619 F.3d 301, 308 (4th Cir. 2010). Although the case law eschews bright lines in the application of the fair use defense, the statute lists the following four factors to guide a court's analysis in determining whether an alleged infringing use is a fair use:

> (1) the purpose and character of the use, including whether the use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for the copyrighted work.

17 U.S.C. § 107. These factors are not meant to be exclusive, but simply illustrative as "general guidance about the sorts of copying that courts and Congress most commonly have found to be fair uses." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994). Additionally, courts are not to treat the four factors in isolation; rather, all four factors "are to be explored, and the results weighed together, in light of the purposes of copyright." *Id.* And the core "purpose of copyright is to create incentives for creative effort." *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 449 (1984). Significantly, the weight associated with each factor is case-specific, as "a given factor may be more or less important in determining whether a particular use should be considered fair under the specific circumstances of the case." *Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1260 (11th Cir. 2014). Thus, a court must consider each factor individually in the context of the case at bar, while remaining mindful that the ultimate guidepost in the analysis is whether the alleged infringing use diminishes any incentive for creativity.

The first listed § 107 factor—the purpose and character of the alleged infringing use—weighs in favor of a finding of fair use in this case. This is so because the record makes clear that defendant's submission of Toothman's resumé is qualitatively different from the typical use

or purpose of a resumé, which, in the case of an individual, is to aid the individual in securing a position or business. Indeed, that was plaintiffs' purpose in sending defendant Toothman's resumé. But that was not defendant's purpose in submitting the resumé to the Texas court and opposing counsel; instead, defendant's purpose in that regard was to provide the requisite notice of a potential expert witness. No less an authority than Professor Nimmer recognizes the significance of this difference in his copyright treatise, as Professor Nimmer makes clear that the copying of a work for the purpose of submitting the document in a judicial proceeding does not constitute copyright infringement unless the copyright holder can show that this use harms the potential market for the document. Specifically, as Professor Nimmer's treatise notes:

> [R]eproduction of a work in connection with a judicial proceeding, even where the reproduction is of the work in its entirety, serves a qualitatively different function and does not satisfy the reader demand for the original.... Although there are few ... cases on point, works are customarily reproduced in various types of judicial proceedings ... it seems inconceivable that any court would hold such reproduction to constitute infringement either by the government or by the individual parties responsible for offering the work in evidence....

Nimmer on Copyright § 13.05[D][2].

Several cases confirm and illustrate this principle by holding that the copying of a copyrighted work in its entirety for use or submission in a judicial proceeding constitutes fair use, not infringement. The Fourth Circuit reached precisely this result in *Bond v. Blum*, 317 F.3d 385 (4th Cir. 2003). There, the defendants copied and used a copyrighted manuscript as evidence in a state court child custody proceeding. *Id.* at 395. On these facts, the Fourth Circuit found that the use of the manuscript there was a fair use, noting specifically that application of the first factor weighed "heavily against Bond's infringement claim," because the narrow purpose of defendants' use was in connection with a judicial proceeding. *Id.* Since defendants' challenged use in *Bond* was noncommercial, the copyright holder there was required to

demonstrate either that defendants' use of the manuscript in that case was harmful, or that defendants' use would harm the potential market of the manuscript. *Id.* Because the copyright holder there was unable to meet this burden, this factor weighed in favor of finding that defendants' use of the manuscript was fair. *Id.* For the same reason, a similar result should obtain here.

A similar conclusion was reached in *Jartech, Inc. v. Clancy*, 666 F.2d 403, 407 (9th Cir. 1982), where the Ninth Circuit found that the copying of adult movies by a city council for use in a nuisance abatement judicial proceeding was fair use because the use was not "for subsequent use and enjoyment," but instead for "evidence to be used in the nuisance abatement proceedings." Critical to this conclusion was the fact that the alleged infringers did not reproduce the work for its intrinsic purpose, that is, the "same purpose that the copyright holder intended his audience to use or enjoy the work." *Id.* at 406. Similarly, in *Shell v. DeVries*, No. Civ. 06-cv-00318-REB, 2007 WL 324592 (D. Colo. Jan. 31, 2007), *aff'd*, No. 07-1086, 2007 WL 4269047 (10th Cir. Dec. 6, 2007), the district court found that the copying of an excerpt of a website for use as an exhibit to a motion for attorney's fees was a fair use because the website was not being put to its "intrinsic use" and thus "the first factor weigh[ed] heavily in favor of fair use." *Id.* at *3-*4.[8]

*Bond*, *Jartech* and *Shell* point persuasively to the conclusion that the first § 107 factor weighs firmly in favor of finding fair use in this case. Here, as was true in those cases,

---

[8] *See also Hollander v. Swindells-Donovan*, No. 08-cv-4045 (FB) (LB), 2010 WL 844588 at *4 (E.D. N.Y. March 11, 2010) ("[T]he decisive factor bearing upon the issue of 'fair use' in the present case is that [defendant] introduced the [copyrighted material] into the judicial proceeding only as evidence . . . [defendant] did not attempt to produce a comparable or derivative work, nor did [defendant] use the [copyrighted material] for [its] expressive content."). Notably, neither party cites a case where a resumé was the basis for a copyright infringement claim.

9

defendant's submission of Toothman's resumé in the Texas case was for the purpose of providing notice in a judicial proceeding, a purpose different from the resumé's intrinsic commercial purpose.[9] It is also clear here, as was true for the plaintiffs in *Bond*, *Jartech* and *Shell*, that plaintiffs cannot demonstrate, as required, that defendant's submission of the resumé to the Texas court harmed any potential market for the resumé. It is hard to imagine that there is any market for the resumé. Moreover, as defendant points out, rather than harm Toothman, it is more likely that defendant's use of the resumé in the Texas case benefited Toothman by enhancing his profile as an expert. In fact, it is difficult to see how disclosure of Toothman's resumé in the Texas case could harm either any market for the resumé or the market for Toothman's services as an expert. *See Shell*, 2007 WL 324592 at *5 ("Indeed, it is impossible to imagine how the defendants' use of the materials as an exhibit to a motion for attorneys' fees could in any way impact the marketability of the materials."). In this regard, it is worth recalling that Toothman on his website offers to provide his resumé to prospective clients and thus it is anomalous for plaintiffs now to claim that disclosure of his resumé is somehow harmful to his business.[10] In sum, because the undisputed record reflects that defendant submitted Toothman's resumé in connection with a judicial proceeding and that this did not harm any market that might

---

[9] *See, e.g.*, Deposition of Blair Dancy at 84:14-17 ("[W]e needed permission of the court to bring [Toothman] in past the designation deadline since the designation deadline had passed . . . ."); Deposition of John W. Toothman at 120:5-10 ("[M]y understanding was that there had been some kind of scheduling order or deadline for designating experts and it had been missed or passed already. I didn't know when. And that because Mr. Dancy's firm was new into the case, they were going to get that extended.").

[10] *See* The Devil's Advocate, http://www.devilsadvocate.com/bios.html (last visited December 16, 2014) ("Current resume available to prospective clients.").

10

exist for the resumé, it follows that the first § 107 factor—the purpose and character of defendant's use—favors a finding of fair use in this case.[11]

The second § 107 factor is the nature of the copyrighted work. Creative works are closer to the essence of works protected by the Copyright Act than factual works. *See Bond,* 317 F.3d at 395. Thus, "[i]n general, fair use is more likely to be found in factual works than in fictional works." *Stewart v. Abend,* 495 U.S. 207, 237 (1990). Toothman's resumé is far removed from the core of copyright protection, as it is not a fictional work, but is instead a factual recitation of Toothman's qualifications to date. *See Denison v. Larkin,* No. 1:14-cv-01470, 2014 WL 3953637 at *5 (N.D. Ill. Aug. 13, 2014) ("The factual nature of the [work] weighs in favor of a finding of fair use"); *Shell,* 2007 WL 324592 at *4 ("[T]he materials are more factual in nature than creative. Thus, the second factor also weighs in favor of fair use."). Therefore, this factor also favors a finding of fair use.

The third fair use factor is the amount and substantiality of the copyrighted work the allegedly infringing work uses. At a high level of generality, as the amount of copyrighted material that is used increases, the likelihood of fair use decreases. *Bond,* 317 F.3d at 396. But this is an "imperfect generalization" because the inquiry is not just about the quantity copied, but also about the quality of the portion borrowed. *Id.* Moreover, "[w]here the use of the work [is] limited, as it was here, the third factor carries very little weight." *Shell,* 2007 WL 324592 at *5. This is so because when a copyrighted work is submitted in connection with a judicial proceeding, the use of that work serves an important interest. *See Denison,* 2014 WL 3953637 at

---

[11] The decision in *Images Audio Visual Productions, Inc. v. Perini Bldg. Co.,* 91 F. Supp. 2d 1075 (E.D. Mich. 2000) does not change the conclusion reached here; it is distinguishable. Unlike the copyrighted resumé here, the copyrighted photographs used in *Images* were created specifically for the purpose of use as evidence in litigation. *Id.* at 1082.

11

\*5. Consequently, "[c]opying the entire work does not ... guarantee a claim of copyright infringement." *Id.*

Plaintiffs focus entirely on the third factor in their opposition to defendant's motion for summary judgment, arguing that because defendant used Toothman's resumé in its entirety, defendant's use is not a fair use. This argument is unpersuasive; it oversimplifies the analysis under the third factor. Where, as here, the alleged infringer has a legitimate purpose behind his or her copying, and that purpose is substantially different than the original use of the copied work, the quantity of material copied is irrelevant. *See Campbell*, 510 U.S. at 594. Here, defendant copied Toothman's resumé to provide notice in a judicial proceeding, a purpose substantially different from the original use of Toothman's resumé—to generate more business for Toothman and Devil's Advocate. Thus, defendant's use of Toothman's resumé did not "undermine any right conferred by the Copyright Act" nor did defendant's use stifle any incentive for creativity. *Bond*, 317 F.3d at 396. Consequently, the third factor also favors defendant's fair use defense because even though the resumé was copied in its entirety, its use served an important purpose in connection with a judicial proceeding. *See Denison*, 2014 WL 3953637 at \*5.

The fourth and final § 107 factor is the effect of the use on the potential market for, or value of, the copyrighted work. This fourth and most important § 107 factor weighs in favor of finding fair use in this case. *See Harper & Row*, 471 U.S. at 566 ("The last factor is undoubtedly the single most important element of fair use."). The record in this case warrants no finding other than that defendant's submission of the resumé in the Texas case had no effect on any potential market for, or value of, the resumé. Indeed, there has been no showing that there is any market for the resumé. Nor is it persuasive to claim that the market for the resumé is essentially

the market for Toothman's services. In any event, there is also no showing that the market for Toothman's services is, or has been, adversely affected by defendant's submission of the resumé in the Texas case. The effect of that use, if anything, would seem to aid plaintiffs by increasing their prominence or visibility in the field. Indeed, "if anything, [the defendant's use] increases the value of the work . . . but it certainly doesn't decrease it." *Bond*, 317 F.3d at 396-97. Not surprisingly, plaintiffs have not identified a single adverse market consequence to the resumé or to plaintiff's services attributable to defendant's use of the resumé in the Texas case. Nor can plaintiffs avoid this result by resorting to the plainly implausible argument that finding fair use in this case would encourage others to emulate defendant's use of the resumé, thereby causing experts to cease offering their services.

Thus, the fourth and most important § 107 factor, like the first three, compels the sensible conclusion that defendant's submission of Toothman's resumé in the Texas case is protected under § 107 as a fair use. Accordingly, summary judgment is appropriate for defendant on plaintiffs' copyright infringement claim.

An appropriate Order will issue.

Alexandria, VA
December 16, 2014

/s/
T. S. Ellis, III
United States District Judge